1  BENJAMIN B. WAGNER
   United States Attorney
2  R. STEVEN LAPHAM
   Assistant U.S. Attorney
3  PETER M. WILLIAMS
   Special Assistant U.S. Attorney
4  501 I Street, Suite 10-100
   Sacramento, California 95814
5  Telephone: (916) 554-2724



FILED

MAY 1 2012

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) CASE NO.  10-cr-00260-JAM |
|---|---|
| Plaintiff, | ) **PLEA AGREEMENT FOR CORPORATE** |
| v. | ) **DEFENDANT WHOLESALE PALACE,** |
| JACK HAROUN, and | ) **INC.** |
| WHOLESALE PALACE, INC. | ) |
| Defendants. | ) |

I.

**INTRODUCTION**

**A.  Scope of Agreement**: The indictment in this case charges the defendants with thirty-nine counts of mail fraud in violation of Title 18, United States Code, § 1341.  This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and corporate defendant WHOLESALE PALACE, INC., (the "defendant").  This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal,

1

state, or local prosecuting, administrative, or regulatory authority.

**B. Court Not a Party:** The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, the Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement. If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II.

### DEFENDANT'S OBLIGATIONS

**A. Guilty Plea:** The defendant corporation will plead guilty to Count 12 of the indictment, violation of 18 U.S.C. § 1341. The defendant agrees that it is in fact guilty of that charge and that the facts set forth in the Factual Basis For Plea attached hereto as Exhibit A are accurate.

**B. Restitution:** The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of certain offenses.

**C. Fine:** The defendant agrees to pay a criminal fine if one is recommended by the presentence report, and in the amount stated therein.

**D. Special Assessment:** The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or

money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this plea agreement is voidable by the government if he fails to pay the assessment prior to that hearing.

## III.

### THE GOVERNMENT'S OBLIGATIONS

**A. No Further Charges:** The government agrees to bring no further charges arising out of the conduct set forth in the Factual Basis to this plea agreement.

**B. Recommendations:**

   **1. Fine:** The government will recommend a fine at the low end of the guideline range as calculated by the United States Probation Officer. If the United States Probation Officer determines that imposition of a fine within the guideline range would impair the ability of the corporation to make restitution, the government agrees to follow the Probation Officer's recommendation as to the imposition of a fine below the guideline range or no fine at all.

   **2. Acceptance of Responsibility:** If the United States Probation Office determines that a two-level reduction in the defendant's culpability score for his full and clear demonstration of acceptance of responsibility is appropriate under U.S.S.G. § 8C2.5(g)(2), the government will not oppose such a reduction and will so move at the time of judgment and sentencing, so long as representatives of the defendant corporation meet with and assist the probation officer in the preparation of the pre-sentence report, are truthful and candid with the probation officer, and do not otherwise engage in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-

sentence report or during the sentencing proceeding.

## IV.

## ELEMENTS OF THE OFFENSE

**A. Elements of the Offense:** At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty:

(1) That beginning in or about May of 2006, and ending in or about August of 2008, defendant devised a scheme to defraud the State of California of the excise tax on non-cigarette tobacco products (called Other Tobacco Products or OTP) by making false representations to the State of California regarding the amount of OTP sold in the state, as charged in the indictment;

(2) That defendant knew the representations were false;

(3) That the false representations were material-that is, they were of a kind that would reasonably influence the State of California to forgo collecting tax on the subject OTP;

(4) That defendant acted with the intent to defraud; and

(5) That in order to execute the scheme to defraud, defendant used, or caused to be used, the mails to carry out, or attempt to carry out, an essential part of the scheme to defraud.

Defendant admits that he is, in fact, guilty of this offense as described in count one of the indictment.


## V.

## MAXIMUM SENTENCE

**A. Maximum Penalty:** The maximum sentence that the Court can impose is a fine of $500,000, or not more than the greater of twice the gross gain or twice the gross loss caused by the offense; a five

1  year term of probation; and a special assessment of $100.  18 U.S.C.
2  § 3571(c).

3     **B.  Restitution:** By signing this plea agreement, the defendant
4  corporation also agrees that the Court can order the payment of
5  restitution for the full loss caused by the defendant's wrongful
6  conduct.  The defendant agrees that the restitution order is <u>not</u>
7  restricted to the amounts alleged in the specific count to which the
8  defendant is pleading guilty.  The defendant further agrees that he
9  will not attempt to discharge in any present or future bankruptcy
10 proceeding any restitution imposed by the Court.

11    **C.  Remedial Order, Community Service, Compliance/Ethics**
12 **Program:** In addition to restitution, the court may impose as a
13 condition of probation a requirement that the defendant corporation
14 remedy the harm caused by the offense and eliminate or reduce the
15 risk that the instant offense will cause future harm.  The court may
16 also order the defendant to perform community service and develop an
17 effective compliance and ethics program.

## VI.

### FINE DETERMINATION

20    **A.  Statutory Authority:** The defendant corporation understands
21 that the Court must consult the Federal Sentencing Guidelines (as
22 promulgated by the Sentencing Commission pursuant to the Sentencing
23 Reform Act of 1984, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998,
24 and as modified by <u>United States v. Booker</u> and <u>United States v.</u>
25 <u>Fanfan</u>, 543 U.S. 220 (VI), 125 S.Ct. 738 (2005)) and must take them
26 into account when determining a fine range.  The defendant
27 understands that the Court will determine a non-binding and advisory
28 guideline fine range for this case pursuant to the Sentencing

1  Guidelines.  The defendant further understands that the Court will
2  consider whether there is a basis for departure from the guideline
3  sentencing range (either above or below the guideline fine range)
4  because there exists an aggravating or mitigating circumstance of a
5  kind, or to a degree, not adequately taken into consideration by the
6  Sentencing Commission in formulating the Guidelines.  The defendant
7  further understands that the Court, after consultation and
8  consideration of the Sentencing Guidelines, must impose a fine that
9  is reasonable in light of the factors set forth in 18 U.S.C.
10 § 3553(a).
11      **B.   Stipulations Affecting Guidelines Calculation**:  The
12 government and the defendant agree that there is no material dispute
13 as to the following sentencing guidelines variables and therefore
14 stipulate to the following:
15      **1.   Base Offense Level**: The base offense level for Count 12
16 is **7**, pursuant to USSG §2B1.1(a)(1).
17      **2.   Specific Offense Characteristics**: The base offense
18 level is increased by the following:
19           **(a) Amount of loss:**  The amount of loss attributable
20 to the defendant is greater than $400,000, but not more than
21 $1,000,000, thus increasing the offense level by **14**.  U.S.S.G.
22 §2B1.1(b)(1)(H).
23      **3.   Adjusted Offense Level: 21**
24      **4.   Base Fine Range**: $910,000 (U.S.S.G. §8C2.4(d))
25      **5.   Culpability Score: 3**
26           **(a) Starting Culpability Score: 5.** (U.S.S.G.
27      §8C2.5(a))
28           **(b) Acceptance of Responsibility: -2.**  (U.S.S.G.

6

§ 8C2.5(g)(2))

  6. **Multiplier:** 0.60 - 1.20  (U.S.S.G. §8C2.6)

  7. **Fine Range:** $546,000 - $1,092,000 (U.S.S.G. §8C2.7)

## VII.

## WAIVERS

  A. **Waiver of Constitutional Rights**: The defendant understands that by pleading guilty it is waiving the following constitutional rights:

  1. **Public and Speedy Trial**: If defendant were to plead not guilty to the charge in the information, it would be entitled to a public and speedy trial.

  2. **Jury Trial, Presumption of Innocence, Unanimous Verdict**: The defendant has an absolute right to a jury trial. At that trial, the jury would be instructed that the defendant is presumed innocent and that it carries that presumption throughout the trial until such time as the government overcomes the presumption by evidence adduced at the trial. The jury would be further instructed that it could not convict the defendant unless all twelve jurors agreed that the government had proved guilt beyond a reasonable doubt.

  3. **Confrontation of Witnesses**: At the trial, the defendant would be entitled to see, hear and confront the witnesses and the evidence against it. These witnesses would be testifying under the penalty of perjury and would be subject to cross-examination by the defendant's attorney.

  4. **Compulsory Process**: At the trial, the defendant would be entitled to present witnesses and other evidence in his own behalf and, if the witnesses refused to appear voluntarily, the defendant

1 would be entitled to use the court's process to compel their
2 attendance.

3     **5. Right to Appeal**: If, after a trial, the defendant were
4 convicted, it would have a right to appeal the conviction.

5     **6. Representation of Counsel**: The defendant is entitled
6 to be represented by competent counsel through all stages of the
7 case, including appeal, and if the defendant could not afford an
8 attorney one would be appointed for it by the court.

9 Defendant understands that by pleading guilty he is waiving all
10 of the rights set forth above. Defendant's attorney has explained
11 those rights to him and the consequences of his waiver of those
12 rights and the defendant freely and voluntarily consents to said
13 waiver.

14     **B. Waiver of Appeal and Collateral Attack**: The defendant
15 understands that the law gives it a right to appeal its conviction
16 and sentence. It agrees as part of his plea, however, to give up the
17 right to appeal the conviction and the right to appeal any aspect of
18 the sentence imposed in this case so long as his sentence is no
19 longer than the top of the Sentencing Guidelines range determined by
20 the Court consistent with the stipulations set forth above about the
21 Sentencing Guidelines variables (that is, an adjusted offense level
22 of ~~18~~ 21 or below). He specifically gives up his right to appeal any
23 order of restitution the Court may impose.

24 Regardless of the sentence he receives, the defendant also gives
25 up any right he may have to bring a post-appeal attack on his
26 conviction or his sentence. He specifically agrees not to file a
27 motion under 28 U.S.C. § 2255 or § 2241 attacking his conviction or
28 sentence.

8

Notwithstanding the agreement in paragraph III. A. above that the government will bring no further charges against the defendant, if the defendant ever attempts to vacate his plea, dismiss the underlying charges, or reduce or set aside his sentence on any of the counts to which he is pleading guilty, the government shall have the right (1) to prosecute the defendant on any of the counts to which he pleaded guilty; and (2) to file any new charges that would otherwise be barred by this plea agreement. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office. By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses he might have to the government's decision. In particular, he agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

C. **Waiver of Attorneys' Fees and Costs**: The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

## VIII.

### ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant

exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX.

### APPROVALS AND SIGNATURES

**A. Defense Counsel:** I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

DATED: 3-31-12

ALEX R. KESSEL
Attorney for Defendant

**B. Defendant:** I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Further, I have authority to sign this agreement on behalf of the corporate defendant and bind it by the agreement's provisions. Finally, I am satisfied with the representation of my attorney in this case.

DATED: 3-31-12

JACK HAROUN, President and
Chief Executive Officer of
WHOLESALE PALACE, INC.

10

**D.  Attorney for United States:** I accept and agree to this plea agreement on behalf of the government.

DATED: 5/1/12

BENJAMIN B. WAGNER
United States Attorney

By: Peter M. Williams
Special Assistant U.S. Attorney

11

**EXHIBIT "A"**

**Factual Basis for Plea**

WHOLESALE PALACE was a licensed distributor of tobacco products located in Burbank, CA. JACK HAROUN is the president and chief executive officer of WHOLESALE PALACE, and the manager of its day to day operations.

"Other Tobacco Products" (OTP) consist of tobacco products other than cigarettes such as cigars, chewing tobacco and leaf tobacco. California imposes a 46% excise tax on OTP. Licensed tobacco distributors are required to collect this tax when they distribute the product within the State. The distributor must then submit to the California State Board of Equalization (BOE) in Sacramento, California, monthly reports reflecting the amount of untaxed OTP purchased in the previous month and the amount of excise tax owing, together with payment in that amount.

Commencing in approximately May of 2006 through approximately April of 2008, defendants purchased OTP from a Nevada tobacco distributor called Ideal Tobacco, on approximately a weekly basis. They purchased some OTP under the real company name of WHOLESALE PALACE, and a larger amount of OTP under a fake company name called Kim's Supplies. The amount purchase under the real name of WHOLESALE PALACE was reported to the BOE, and state tobacco excise taxes paid thereon. However, the larger amount of OTP purchased under the fake company name was not reported, and no taxes paid thereon. All of the tobacco purchased from Ideal was sold in-state to California customers. The amount of legal tobacco versus contraband tobacco purchased from Ideal was determined by JACK HAROUN.

In furtherance of the scheme to defraud, many of the defendants' subsequent sales of the contraband OTP to in-state customers were done in cash with no record made of the transactions.

In furtherance of the scheme to defraud, defendants would periodically submit by mail to the BOE Forms 501-CT that were materially false and fraudulent in that they substantially underreported the true amount of in-state OTP sales and the corresponding amount of excise taxed owed by the defendants, including the mailings set forth as counts 1 through 37 in the indictment. The false mailings were critical to the success of the scheme in that the reports mailed to BOE concealed the defendants' true amount of in-state sales.

In all, from approximately May of 2006 through approximately April of 2008, defendants sold to California purchasers approximately $1,535,467 worth of untaxed OTP received from Ideal Tobacco in Nevada. Of this, defendants reported and paid taxes on $340,067 worth of OTP. Therefore, in all, based on a tax rate of 46.76%, the State of California was deprived of about $554,000 million worth of excise tax on the untaxed OTP that defendants sold in California.

With respect to Count 12 to which both defendants plead guilty,

on or about June 29, 2006, defendants mailed, or caused to be mailed, a BOE Form 501-CT to the BOE in Sacramento that intentionally under-reported the amount of tobacco that Classic had sold for the month of May 2006 as $0. The actual amount the defendants purchased from Ideal and sold in California for the time represented in the BOE return was $62,542.90.